# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| **RANDOLPH HALE KORSIAK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-00220-JDL |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON THE GOVERNMENT'S MOTION TO DISMISS

## I. INTRODUCTION

Randolph Hale Korsiak, a veteran of the United States Navy, claims that he was negligently treated by Dr. Thomas Franchini (hereinafter "Franchini"), a former Veterans Affairs podiatrist at the Togus Veterans Affairs Medical Center (the "VAMC"). He also alleges that the VAMC and Franchini fraudulently concealed Franchini's negligence, preventing him from asserting his rights in a timely fashion. In his Third Amended Complaint (ECF No. 56), Korsiak asserts claims against the federal government (alternatively, the VAMC or the "Government") for vicarious liability for Franchini's negligence (Count I); negligent infliction of emotional distress (Count II); and fraudulent concealment (Count III). The Government has moved to dismiss the Third Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 61).

In an Order issued in February 2016, I deferred a final ruling on the Government's motion to dismiss in four separate but related cases in which veterans

filed suit against the Government, alleging that they also were negligently treated by Franchini at the VAMC.[1] In that decision, I resolved almost all of the issues raised in the Government's first motions to dismiss in favor of the Government, ruling that Maine's three-year limitations period for bringing claims against health care providers, 24 M.R.S.A. § 2902 (2017), is a statute of repose and not a statute of limitations, and that § 2902 is not preempted by the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2401(b) (2017). *See Wood v. United States*, 1:14-cv-00399-JDL, ECF No. 45 at 40. The Government argues that because § 2902 is a statute of repose, the three-year repose period for the alleged medical negligence began to run when the last negligent acts or omissions allegedly occurred rather than when Korsiak discovered the facts underlying his claim. Therefore, the claims alleged in the Third Amended Complaint are time-barred absent some reason in law or equity for tolling the statute of repose.[2]

Korsiak asserts that the statutory tolling provision in 14 M.R.S.A. § 859 (2017) related to fraudulent concealment applies to his claims:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action[.]

---

[1] *See Wood v. United States*, 1:14-cv-00399-JDL; *Mansir v. United States*, 1:14-cv-00503-JDL; *Prescott v. United States*, 1:14-cv-00551-JDL; and *Myrick v. United States*, 1:15-cv-00045-JDL. A fifth related case, *Downs v. United States*, 1:15-cv-00525-JDL, also alleges negligence against Franchini but was not subject to my February 2016 Order.

[2] Korsiak filed his original complaint in June 2015. However, the action was ordered stayed in October 2015. Consequently, Korsiak's original complaint was not among those addressed in the February 2016 Order.

14 M.R.S.A. § 859. If § 859 governs Korsiak's claims, the six-year limitations period "starts to run when the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." *Westman v. Armitage,* 215 A.2d 919, 922 (Me. 1966). Extending the limitations period from three years from the date of the alleged tortious act in accordance with § 2902's statute of repose, to six years from the time Korsiak discovered the alleged tortious act, brings Korsiak's claims within § 859's six-year statute of limitations. Accordingly, I afforded Korsiak, and the plaintiffs in the related actions, the opportunity to conduct limited discovery on the issue of fraudulent concealment and to seek to file an amended complaint on the basis of that discovery.

For the reasons explained below, I conclude that, as a matter of law, § 859 does not govern Korsiak's claims, and I grant the Motion to Dismiss as to Counts I (Negligence) and Count II (Negligent Infliction of Emotional Distress) for that reason. The Government also moves to dismiss Count III for lack of subject matter jurisdiction pursuant to restrictions established by the FTCA in 28 U.S.C.A. §§ 2675(a) and 2680(h). As explained below, I conclude that Count III should also be dismissed. Accordingly, the Government's Motion to Dismiss is granted in its entirety.

## II. LEGAL ANALYSIS

The Government seeks to dismiss the Third Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A

federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit, i.e., subject matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31 (2007).

A defendant may challenge the court's subject matter jurisdiction in two ways: facially or factually. *See Torres-Negrón v. J & N Records, LLC,* 504 F.3d 151, 162 (1st Cir. 2007). In a facial attack, the court accepts as true those allegations in the complaint—"sometimes augmented by an explanatory affidavit or other repository of uncontested facts"—that are relevant to jurisdiction, draws all reasonable inferences from them in the plaintiff's favor, and determines whether they are sufficient to establish the court's subject matter jurisdiction. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001); *see also Torres-Negrón,* 504 F.3d at 162.

A defendant may also mount a factual challenge to subject matter jurisdiction:

> The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which we shall call a "factual challenge"—permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

*Valentin,* 254 F.3d at 363 (internal citations and footnote omitted). "In a situation where the parties dispute the predicate facts allegedly giving rise to the court's

4

jurisdiction, the district court will often need to engage in some preliminary fact-finding." *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003).

Where, in a factual challenge, the necessary facts are relevant both to jurisdiction and to the merits of the plaintiff's case, however, "the standard applicable to a motion for summary judgment" applies. *Torres-Negrón*, 504 F.3d at 163 (quoting *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005) (internal quotation marks omitted)). If the material jurisdictional facts are not in dispute and the moving party is entitled to prevail on the jurisdictional question as a matter of law, then the motion to dismiss is granted. *Torres-Negrón*, 504 F.3d at 163; *Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 397 (D. Me. 2011). On the other hand, "[s]hould the plaintiff present evidence showing that the relevant facts are genuinely disputed, the case proceeds to trial and the jurisdictional dispute will be reevaluated once the factfinder has resolved the issues of fact." *Sunbury*, 770 F. Supp. 2d at 397 (citing *Torres-Negrón*, 504 F.3d at 163); *see also Valentin,* 254 F.3d at 363 n.3 ("[F]or cases in which the jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case . . . the court may defer resolution of the jurisdictional issue until the time of trial."). At trial, "[i]t is the plaintiff's burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).

Korsiak's Third Amended Complaint alleges facts intended to demonstrate fraudulent concealment in two ways: first, fraudulent concealment allegedly

committed by Franchini in misleading Korsiak as to the need for his February 2008 surgery and Franchini's failure to undertake or recommend any postoperative care; and second, fraudulent concealment allegedly committed by the VAMC in concealing and/or failing to disclose Franchini's negligent treatment to Korsiak. I address, in order, (1) the Government's challenge to Korsiak's allegations of fraudulent concealment; (2) whether a special relationship existed between Korsiak and Franchini or the VAMC, imposing a duty to disclose Franchini's alleged negligence to Korsiak; and (3) the Government's contention that Count III be dismissed pursuant to FTCA provisions 28 U.S.C.A. §§ 2675(a) and 2680(h).

1.  **Fraudulent Concealment under 14 M.R.S.A. § 859**

To benefit from the six-year statute of limitations provided by § 859, Korsiak must establish that the VAMC or Franchini, acting as its employee, actively concealed facts from him and that he relied on the concealment to his detriment. *Brawn v. Oral Surgery Assocs.,* 819 A.2d 1014, 1026 (Me. 2003). "Active concealment of the truth connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 905 (Me. 1999) (internal quotation marks omitted). Active concealment does not require an affirmative false statement and "may consist as well in the concealment of what is true as in the assertion of what is false." *Horner v. Flynn*, 334 A.2d 194, 203 (Me. 1975), overruled on other grounds by *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139 (Me. 1984); *see also Sprague Energy Corp. v. Massey Coal Sales Co.*, No. 05-222-P-S, 2006 WL 696197, at *17 (D. Me. Mar. 15, 2006) ("Fraud need not necessarily

take the form of an express false statement; rather, it can be predicated on active concealment of the truth.").

When a plaintiff alleges fraudulent concealment through the active concealment of facts, the court must assess the allegations against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other person. *Brawn*, 819 A.2d at 1026; *see also Harris Mgmt., Inc. v. Coulombe,* 151 A.3d 7, 16 n.7 (Me. 2016).[3] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Alternatively, Korsiak may show that a special relationship existed between himself and the VAMC or Franchini, acting as its employee, which imposed a duty to disclose to Korsiak the facts associated with the alleged professional negligence, and the breach of that duty by the VAMC or Franchini. *See Brawn*, 819 A.2d at 1026. Absent a special relationship, silence and inaction are insufficient as a matter of law to establish active concealment because omission by silence is not tantamount to

---

[3] Korsiak argues that the five elements of fraud—as stated in *Brawn*—do not apply in their entirety to tolling for fraudulent concealment under § 859. *See Brawn*, 819 A.2d at 1026. Instead, Korsiak urges the Court to apply a different § 859 analysis as articulated in *Bangor Water District v. Malcolm Pirnie Engineers*, 534 A.2d 1326, 1329 (Me. 1988). However, *Brawn*—the more recent decision by the Maine Law Court—is clear on this point, and I apply its analysis. *See Brawn*, 819 A.2d at 1026 ("When a plaintiff contends a genuine issue of material fact concerning the defendant's fraudulent concealment has been generated [such that the plaintiff can "benefit from section 859"], the court assesses the facts against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purposes of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other.") (internal quotation marks omitted).

7

supplying false information. *See Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) ("[A]bsent a fiduciary or confidential relationship[] there is no duty to disclose information."); *Glynn v. Atl. Seaboard Corp.*, 728 A.2d 117, 120 (Me. 1999).

I analyze Korsiak's assertion of fraudulent concealment by considering (A) the relevant allegations of active concealment made by Korsiak; (B) the Government's challenge to those allegations; and (C) Korsiak's allegations of a special relationship.

### A. Korsiak's Allegations of Active Concealment

#### i. Concealment by Dr. Franchini

Korsiak's Third Amended Complaint alleges that Franchini concealed material facts from Korsiak in an attempt to cover up the fact that he performed improper and unnecessary surgery. Specifically, Korsiak alleges that in October 2007, Franchini diagnosed him as having a Haglund deformity of the left foot, explained that this diagnosis was demonstrated by Korsiak's x-rays, and recommended that Korsiak undergo surgery to correct the problem. Korsiak claims that on the day of the surgery in February 2008, Franchini informed him that the scope of the surgery needed to be expanded based on Korsiak's symptoms. As a result, Franchini also operated on the plantar medial aspect of Korsiak's foot in addition to removing the Haglund deformity.

Korsiak alleges that Franchini was reckless with regard to the truth or falsity of Franchini's representations as to whether he needed any type of surgery at all, and that those representations were material to his decision to consent to the surgical procedure. Following the surgery, Korsiak claims that he did not see Franchini again,

8

but continued to experience chronic pain and swelling in his left foot. Korsiak also avers that Dr. Timothy Richardson, Chief of Staff of the VAMC, conducted a review of Franchini's care of him in 2013 and concluded that Franchini provided substandard care, specifically, by causing irritation to his Achilles heel and by not ordering postoperative physical therapy. Korsiak also alleges that in 2013 the VAMC's former Chief of Surgery, Dr. Robert Sampson, described Franchini's care of Korsiak as "overkill" and stated that most experienced, competent practitioners would have handled Korsiak's case differently.

Korsiak argues that Franchini's recommendation of surgery, his subsequent recommendation that the surgical scope be expanded, his actual performance of the surgery, and his failure to undertake or recommend postoperative care all implicate both negligence and fraudulent concealment.

### ii. Concealment by the VAMC

Korsiak contends that the VAMC fraudulently concealed Franchini's malpractice from him. Specifically, the Third Amended Complaint alleges that in late 2009, VAMC officials became aware of concerns regarding Franchini's surgical practices. Dr. Richardson then directed Dr. Sampson to conduct a review of 25 random surgical procedures performed by Franchini. Dr. Sampson completed this review in April 2010 and concluded that there appeared to be "significant documentation and quality of care issues in a number of [the 25] cases."[4] On April 27, 2010, the VAMC Professional Standards Board suspended Franchini who would

---

[4] It bears emphasis that this and the other alleged facts have not been fully examined and tested by the trial process and finally determined by a factfinder.

9

later resign on November 8, 2010. By June 2010, the VAMC was developing a list of patients that had received substandard care from Franchini.

The VAMC's disclosure of adverse events related to clinical care is governed by VHA Directive 2008-002 (the "Directive"). The Directive defines three kinds of disclosure, including "Institutional Disclosure" for "cases resulting in serious injury or death, or those involving reasonably expected serious injury, or potential legal liability[.]" ECF No. 56-5 at 3. In April 2010, the VAMC prepared an "Issue Brief" concerning the VAMC's investigation of Franchini's care. It noted that as of April 15, 2010, it was "considered likely that institutional disclosure of unnecessary or inappropriate surgical interventions [by Franchini] will be required." ECF No. 56-6 at 2. Korsiak alleges that on June 14, 2010, Drs. Richardson and Sampson had actual knowledge that some of Korsiak's medical records contained false information, and that by November 2010 the VAMC had actual knowledge that Korsiak had sustained an adverse event. Over two years later, the VAMC contacted Korsiak in January 2013 to alert him that Franchini may have provided him negligent care. Korsiak alleges that the VAMC actively concealed Franchini's negligence from him by deliberately delaying its investigation and disclosure of Franchini's negligence.

### B. The Government's Challenge

The Government disputes the accuracy of most of the relevant factual allegations made in the Third Amended Complaint, and submits declarations and exhibits which, it contends, establish that neither Franchini nor the VAMC engaged

in fraudulent concealment. In response, Korsiak has submitted his own declarations, deposition transcripts, and exhibits.

As to Franchini, the Government argues that Korsiak has only pleaded facts and produced evidence regarding statements made *prior* to his February 2008 surgery, and has alleged or shown no postoperative misrepresentation or concealment. As to the VAMC, the Government contends that even assuming *arguendo* that the VAMC *did* conceal information from Korsiak, there is no factual support that the VAMC had actual knowledge of any material information that it could have concealed until after Korsiak's three-year period of repose had run.

The Government makes both a facial and a factual challenge to Korsiak's allegations. Neither party cites to decisional authority in this Circuit as to whether a defendant can have it both ways by asking the court to consider the sufficiency of a complaint's jurisdictional allegations, while simultaneously disputing most of those allegations and submitting evidence outside the pleadings. In *Torres-Negrón*, however, the court noted that "if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling." 504 F.3d at 162 n.8, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54 (1969); *but see Hollingsworth v. United States*, No. CV-05-80-B-W, 2005 WL 3435099, at *4 n.5 (D. Me. Dec. 14, 2005) ("[A]ddressing the sufficiency of the allegations in the Complaint would appear to be a necessary prerequisite before examining their underlying

accuracy."). I adopt the approach suggested by *Torres-Negrón*. Where, as here, a party disputes the jurisdictional allegations of a complaint and offers a substantial body of evidence in support of its position, the court's inquiry should focus on that evidence to determine whether subject matter jurisdiction actually exists.

It is apparent from the factual record submitted by the parties that the jurisdictional facts (i.e., fraudulent concealment) and the facts related to the merits (i.e., negligence) are intertwined. Both concern what Franchini allegedly did and said to Korsiak, and what was and was not communicated to Korsiak regarding the potential cause of his ongoing pain. As such, I employ the standard applicable to a motion for summary judgment in ruling upon the Government's factual challenge, *see Torres-Negrón*, 504 F.3d at 162-63, by assessing the record in the light most favorable to Korsiak as the nonmovant and resolving all reasonable inferences in his favor. *See Small Justice LLC v. Xcentric Ventures LLC,* 873 F.3d 313, 323 (1st Cir. 2017). Applying that standard, I conclude that Korsiak's allegations of active concealment raise no genuine issues of disputed material fact concerning whether Franchini concealed instances of alleged negligence from Korsiak or whether the VAMC concealed Franchini's negligence from Korsiak.

As to Franchini, while the facts in evidence may implicate negligence, even when assessed in the light most favorable to Korsiak, they do not demonstrate fraudulent concealment. All of Franchini's alleged recommendations and misrepresentations were communicated to Korsiak *prior to* his 2008 surgery—the cause of Korsiak's alleged injury—which is inconsistent with fraudulently concealing

that a surgery was negligently performed. Franchini could not conceal what had not yet happened. Similarly, the Third Amended Complaint's conclusory allegation that Franchini "was reckless with regard to the truth or falsity of his representations" that Korsiak needed any surgery at all, speaks to Franchini's alleged medical negligence rather than his concealment of the same, as the procedure had not yet been performed and there was not yet any harm to conceal. Finally, Franchini's alleged failure to undertake or recommend any postoperative care does not constitute active concealment because silence and inaction are insufficient as a matter of law to establish fraudulent concealment absent a special relationship (*see* Section II.1.C *infra*). I therefore conclude that Korsiak has not demonstrated that § 859 applies to his claims on the basis of active fraudulent concealment by Franchini.

As to the VAMC, there is no evidence that the VAMC had actual knowledge of any material information related to Franchini's possibly negligent treatment of Korsiak until after the three-year statute of repose had run. "In order to prevail in a claim that a cause of action has been fraudulently concealed, a party . . . must show that the defendant had actual knowledge of a fact before the defendant can be charged with an intent or design to conceal it from the plaintiff." *Bangor Water Dist.*, 534 A.2d at 1329. The undisputed evidence indicates that Dr. Sampson reviewed Korsiak's record between March 13 and March 20, 2012, and found that Franchini had forgone more conservative treatment and performed surgery where it was not indicated. ECF No. 56-2 at 2-3. Although the Third Amended Complaint alleges that the VAMC was aware that Korsiak had sustained an adverse event as early as June

13

2010, ECF No. 56 at ¶ 93, and no later than November 2010, *id.* at ¶ 103, Korsiak has not produced evidence that contradicts the Government's evidence, including the Declaration of VAMC Director, Ryan Lilly, which shows that the VAMC did not review Korsiak's case until March 2012. ECF No. 61-1 at ¶ 16. Korsiak also contends in support of fraudulent concealment that by 2010, when the VAMC began a review of all of Franchini's surgical cases, the VAMC had actual knowledge of the possibility that every surgical patient of Franchini had been subject to negligent care. Even assuming, however, that the VAMC was on notice in 2010 of the possibility that every patient treated by Franchini had received substandard care, which the Government disputes, that mere possibility is not actual knowledge that Korsiak suffered an adverse event. Thus, there is no dispute of fact that the VAMC did not have actual knowledge that Korsiak suffered an adverse event prompting disclosure until over four years after Korsiak's February 2008 surgery, which Korsiak concedes was the month of his last contact with Franchini. ECF No. 66 at 8. Even assuming, therefore, that the VAMC concealed material information from Korsiak starting in March 2012, Korsiak's claims are still time-barred. "After a cause of action expires pursuant to the three-year statute of limitation no amount of subsequent concealment can revitalize an already stale claim." *Brawn*, 819 A.2d at 1026.

Korsiak's allegations of active fraudulent concealment by the VAMC do not create a genuine dispute of fact and I conclude that the six-year statute of limitations provided in 14 M.R.S.A § 859 does not apply to Korsiak's claims.

C.  **Special Relationship**

Korsiak contends in the alternative that even absent active concealment, a special relationship existed between him and Franchini, and between him and the VAMC, so that Franchini's failure to undertake or recommend postoperative care, and the VAMC's failure to inform him of Franchini's malpractice, constitute fraudulent concealment. *See Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-cv-00021-NT, 2013 WL 2945058, at *9 (D. Me. June 14, 2013) ("In Maine, fraud by failure to disclose or by silence may be established . . . by demonstrating a special relationship . . . that imposes an affirmative duty to disclose.") (internal citations omitted).

**i. Special Relationship Between Korsiak and Dr. Franchini**

Because the doctor-patient relationship "is one of great confidence and trust," it imposes a duty upon the doctor to disclose all pertinent facts to the patient. *Millet v. Dumais,* 365 A.2d 1038, 1041 (Me. 1976). However, my conclusion above concerning active concealment precludes finding that Franchini breached the duty imposed by the doctor-patient special relationship. Franchini's alleged recommendation about expanding the scope of surgery was communicated to Korsiak *prior* to the surgery, which is inconsistent with a failure on the part of Franchini to disclose medical negligence or a poor surgical outcome. Franchini could not have failed to disclose information regarding an allegedly negligent surgery that had not yet occurred. In addition, there is no evidence pointing toward Franchini being under a duty to report information to Korsiak on the day of the surgery. As explained by the Maine Law Court in *Millett*, a physician's duty to disclose arising from the

physician/patient special relationship does not encompass "the peripheral possibilities of misjudgment and negligence":

> Given the fact that the relationship between physician and patient is one of great confidence and trust, thus imposing a duty to disclose all pertinent facts to the patient, it does not necessarily follow that this obligation to disclose must include the peripheral possibilities of misjudgment and negligence. We deem that the fraudulent concealment contemplated by Section 859 is the failure to disclose specific acts which, if known, might give rise to a cause of action for malpractice.

365 A.2d at 1041. Here, there is no indication in the record that Franchini knew that, as Korsiak alleges, the surgery was performed negligently. Nor is there evidence that Korsiak's postoperative problems were apparent at the conclusion of the surgery. Any negligence was, therefore, no more than a peripheral possibility at that point in time.

There is also no evidence that Franchini breached his duty to disclose pertinent information to Korsiak on the basis of postoperative silence or omissions. *See Brawn*, 819 A.2d at 1026. In fact, Korsiak affirmatively asserts that following the surgery, he "never saw Dr. Franchini again . . . and no post-operative care was ever recommended." ECF No. 66 at 8. Thus, there is no evidence of any postoperative communication between Korsiak and Franchini. *See* ECF No. 66-3 at ¶ 12. This precludes finding that Franchini breached his duty to disclose through silence or omission, as he could not disclose or conceal that which he was unaware of himself.[5]

---

[5] Similarly, Korsiak's citation to the Declaration of Dr. Philip J. Obiedzinki is unavailing: "[W]hen a doctor orders a test, such as a CT scan, that requesting physician has the obligation to follow up and report the results to the patient." ECF No. 66 at 8 (citing *Downs v. United States*, 1:15-cv-00525-JDL, ECF No. 68-5). Here, there is no evidence that Franchini ordered a CT scan—or any test—for Korsiak after his operation. That may or may not constitute negligent care, but it cannot be concealment. Franchini could not conceal or fail to disclose results of tests that did not occur.

### ii. Special Relationship Between Korsiak and the VAMC

Maine law defines a "special relationship" as a relationship "giv[ing] rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and [minor] child, or innkeeper and guest." *Estate of Cummings v. Davie,* 40 A.3d 971, 974 (Me. 2012) (quotation marks omitted).

The nature of Korsiak's relationship with the VAMC—that of a Navy veteran receiving outpatient care for a foot and ankle injury—does not reach the level of a power imbalance that characterized the relationships in which the Maine Law Court has recognized a special relationship. *See, e.g., Dragomir v. Spring Harbor Hosp.,* 970 A.2d 310, 315 (Me. 2009) (finding special relationship between hospital and highly vulnerable psychiatric patients); *Fortin v. Roman Catholic Bishop of Portland,* 871 A.2d 1208, 1220-22 (Me. 2005) (finding special relationship between church and student/altar boy who was sexually abused by a priest). While the VAMC occupied an important role in Korsiak's life to the extent that it provided him medical care, its presence in his life "was not marked by a great disparity of position and influence." *Gniadek v. Camp Sunshine at Sebago Lake, Inc.,* 11 A.2d 308, 314-15 (Me. 2011) (internal quotation marks omitted).

There was, therefore, no special relationship between Korsiak and the VAMC, and no basis to apply § 859 due to any alleged failure to disclose or silence by the VAMC. Thus, I conclude that there is no basis to apply the six-year statute of limitations in § 859 to Korsiak's claims, which are instead governed by the three-year

statute of repose contained in 24 M.R.S.A § 2902. I grant the Government's Motion to Dismiss Counts I (Negligence) and II (Negligent Infliction of Emotional Distress), as time-barred for this reason.

**2.    Dismissal of Count III - Fraudulent Concealment**

The Government also argues that Count III (Fraudulent Concealment) should be dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C.A. §§ 2675(a) and 2680(h). Korsiak has neither objected nor responded to this argument in his opposition brief. "Failure to respond to a motion to dismiss means that opposition to the motion is waived . . . and the motion may be granted for that reason alone[.]" *Andrews v. Am. Red Cross Blood Servs.*, 251 F. Supp. 2d 976, 979 (D. Me. 2003). However, in an excess of caution, I address the merits of the Government's arguments.

Section 2680(h) is a limit on the Federal Tort Claims Act's waiver of sovereign immunity: there is no jurisdiction pursuant to § 1346(b)—which authorizes suits against the United States for certain torts—over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights[.]" 28 U.S.C.A. § 2680(h) (emphasis added). As such, this court has no jurisdiction over Korsiak's count for fraudulent concealment because it is premised on an alleged misrepresentation. *See Mullens v. United States*, 785 F. Supp. 216, 219 (D. Me. 1992) ("The misrepresentation exception to the FTCA bars suits based on negligent as well as deliberate misrepresentations . . . whether based on false statements or a failure

to provide information[.]") (quotations and citations omitted), *aff'd*, 976 F.2d 724 (1st Cir. 1992). For this reason, I also grant the Government's Motion to Dismiss as to Count III.

### III. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss the Third Amended Complaint (ECF No. 61) is **GRANTED** in its entirety.

**SO ORDERED.**

**Dated this 23rd day of February 2018.**

                                           **/s/ JON D. LEVY**
                                           **U.S. DISTRICT JUDGE**